James Anderson is a felon against the Workers' Compensation Commission, 5100125. Let me say first to counsel, Justice Stewart accused himself of this case. Justice Waxton is not here this morning. Justice Holdridge is not able to be here this morning. But they are both members of this panel for this case. And although they are not able to be here today for the oral arguments made here, they have the benefit of reviewing the briefs and occasions. They've also had the benefit of reviewing the records. The oral arguments presented today will be reviewed by them. And although not present today, they will be active participants in the decision-making process in each case argument. Please proceed. May it please the Court, Counsel. Good morning. My name is Nathan Lanter and I represent the employee appellant in this matter, James Anderson. This case comes before the Court on Appeal in the Circuit Court in Randolph County. Procedurally, this case was tried in Winnington before Arbitrative Dibble on James Anderson's 19b petition for emergency hearing. The Arbitrator determined that James Anderson sustained an accidental injury arising out of and in the course of his employment with Gilston Mary Lee on November 29, 2006. And this injury was to his left knee. The Arbitrator also found that the James condition, Mr. Anderson's condition of the leg and his cause related to the accident. And as a result, the Arbitrator awarded TTD benefits, medical expenses, and mileage. Gilston Mary Lee set the case up for review by the Commission. And the Commission affirmed and adopted the Arbitrator's decision in its entirety with no dissent. Gilston appealed again to the Circuit Court and the Circuit Court vacated the Arbitrator's decision. Thus, this is our appeal of that Circuit Court decision. And the standard review is the manifest way of the evidence. Now, there are two issues, and I think the issues are straightforward. First, whether the Commission's decision on accident causation are against the manifest way of the evidence, and whether the award of medical expenses, mileage, and TTD benefits is also against the manifest way of the evidence. It's our position or argument that the record fully supports the Commission's decision on both issues.  Counsel, are you proceeding on the theory that the accidental injury at work accelerated a preexisting condition? Or what theory are you proceeding on? Because that's what the Commission ultimately found. That's correct. They modified the Arbitrator's decision. Yes, that is correct. They modified it. And you're hanging your hat on that argument as well. Yes. And before I continue with the argument, I think it's important to mention that it is within the province of the Commission to judge the credibility of the witnesses, the weight of their testimony, and determine what weight of the evidence. Now, turning to the record, and my brief does a better job of this, but I want to highlight a few things. Number one, James Anderson is 61 years old. He has two years of college and 20 years in the U.S. Army and the National Guard. He's a machine operator for Gilstrom Area League, and at times, as part of his job duties, operated a tow motor. Then on November 29th of 2006, he went to get into the tow motor, slammed his left knee into the tow motor's iron frame. He fell down. He testified he twisted his knee as well. The knee pain was severe, and he had not experienced pain like this before. Now, I think it's brought up in counsel's brief regarding the severity of that accident, and Mr. Anderson testified that he finished his shift, about two hours worth, maybe an hour and a half worth. He went home and went to the emergency room the next day because the left knee pain did not abate. Now, both the Commission and the arbitrator found Mr. Anderson to be credible. He did testify at the hearing that he did receive an injection and did have some treatment to the knee prior to our date of accident. However, he did testify that days, weeks, and months before our date of injury, he had no problem performing his job duties, and he received no medical treatment to his left knee. There's no dispute that he suffered from pre-existing ICO arthritis, is there? No, there's no dispute. But after his left knee stuck the metal frame on the tow motor and twisted his knee as it fell, there was significant change in the condition of the left knee. He reported the injury to his supervisor, as I said earlier, went to the emergency room the next day. A few days after that, he went to Dr. Quartz, his family physician, who believed James had suffered a work-related injury, prescribed physical therapy, and eventually had him undergo a left knee MRI. So based on these treatment recommendations, I think three things were inferred. Dr. Quartz thought that this was a serious injury. All right, to cut to the chase. Yes. Dr. McMullen. Yes. Claimant's expert opined that the claimant's accident, in essence, aggravated the pre-existing osteoarthritis in the left knee. The employer's doctor, Dr. Solman, obviously had a completely contrary opinion. So we have sort of dueling arguments, a medical opinion. That's correct, to a certain degree. Neither doctor questioned whether or not an accident had occurred, which, of course, was something that the circuit court did not agree. But both the experts here agree that an accident did occur. It was just a matter of difference of opinion on the diagnosis and also on what treatment was reasonably necessary to treat that particular diagnosis. So when there's conflicting medical opinions, what should happen? I think it's up to the commission to make that determination as to who's more persuasive. Now, and to that regard, the commission found that Dr. McMullen's opinions were persuasive. Because of his deposition, he did have the opportunity to review pre-2006 medical records from Dr. Quartz that showed that Mr. Anderson only had degenerative arthritis. He testified, Dr. McMullen did, that these records did not change his causal opinion, that the injury aggravated the pre-existing arthritis, causing knee pain, and required a total knee replacement. So his opinions were based on the understanding that James did have some issues with the knee before November 29, 2006, and that his symptoms changed significantly after and due to the incident. So you have claimant's testimony and Dr. McMullen's opinion. Is there any other evidence in the record to support the claimant's position? What position, exactly? Well, that this was an aggravation of a pre-existing condition. I'm not suggesting you need to, but can you point any additional evidence just to clarify? Aside from Dr. McMullen's testimony and data of the claimant, I do not believe there's any. As I said earlier also, not a single medical provider questioned whether or not Mr. Anderson had suffered a work-related injury. So that being said, the circuit court, in my opinion, or unbelievably, found that James had not suffered a work-related injury of any type, and also found that Dr. McMullen did not review the prior records, and called into question Dr. McMullen's testimony, which, of course, that's not the case. And also, it claimed that there are discrepancies in the records that call into question James's credibility. And I submit the majority of those, if not all of them, are really inconsequential in my opinion, at best. So therefore, the commission and the arbitrator considered James's live testimony, reviewed the medical records, considered Dr. McMullen's testimony, and that of the section 12 examiner. Both the commission and the arbitrator found James credible, and Dr. McMullen persuasive. This fact finds it well within the confidence of the commission. The decision is not against the manifesto of the evidence, and should be affirmed in its entirety. And this includes the award of temporary disability benefits, medical bills, and mileage. And I'd like to reserve the rest of my time, unless you have any other questions. Thank you, Counselor. Counselor, please. May it please the Court, my name is Cheryl Interbion, here on behalf of Gilson Mary Lee. The circuit court correctly overturned this decision. And I know, based on what you just heard Mr. Lanter say, you're probably surprised and amazed that this would have happened. If I stood here and I told you 14 statements that were untrue, that you could show were untrue, I would not be considered a credible person in your eyes. And the first sentence of the arbitrator's decision is, I find the petitioner credible. And that was part of the focus of Judge Shewark in Randolph County. There were 14 contradictions between what Mr. Anderson testified to and what his medical records stated. But moving even farther back in the Randolph County Circuit Court's order, is the fact that Judge Shewark specifically stated that the medical records taken one day after the alleged accident revealed no injury. They didn't. He testified that he slammed his knee into a tow bar, twisted and fell, laid on the ground, was in severe pain, 10 out of 10. When Dr. McMullen, whose opinion the Commission relied upon, was asked about Mr. Anderson's ability to work after such a severe accident, he said, no, I don't think he would have been able to. In this case, Mr. Anderson did. He continued his shift. He testified that he came in early at 10. Shifts are from 11 to 7. The accident was at 3. He worked four more hours. So you have that initial problem with this whole case. He then goes in for treatment at the emergency room. And when he gets to the emergency room, they take an x-ray. He tells them he's never had any prior trouble with his knee. But amazingly, there's a knee x-ray that they are able to compare the new x-ray to, of which there is absolutely no difference between the two films. The one was taken in March of 2005, and the other being November 30, 2006. There's no difference. No injury. Didn't McMullen sort of try and explain that, as to why there could be a period of time where there were no symptoms, and then there's an accident, and it opens up the accelerated condition? Didn't McMullen sort of opine on that issue somewhere in the record? He kind of ties it in, but the problem with McMullen's testimony on that is that you have to go back to the original findings of that physician at the emergency room. There was no bruising. There was no swelling. There was no evidence of any injury. When Mr. Anderson presents to Dr. Quartz three days later, no bruising. He goes in and tells Dr. Quartz, oh, it was really swollen before. It was swollen while he was at the hospital. The hospital records say there was no swelling. And then even Dr. Quartz looks at the knee and says, there's no swelling. There's no acute injury evident here. And basically we're all working on this premise of the man, well, he testified that he hit it on a tow motor, twisted it, and fell, but what he told the hospital and Dr. Quartz was that he hit his knee on a tow bar. Let's stop there for a second. Assuming for the sake of the argument that the claimant was substantially impeached in the 14 instances in which you refer to, there's credibility problems with the claimant, does that mean that the claimant cannot recover based on the testimony of Dr. McMullen? He loses because of some credibility problems with his testimony automatically? He wouldn't have, but the very first sentence of the arbitrator's decision, which was affirmed by the commission, is we find the petitioner credible. And considering that what Mr. Anderson told Dr. McMullen with regard to his accident is different from what he testified to,  Dr. McMullen didn't see him after the accident. Dr. McMullen was not treating for the accident. Dr. McMullen specifically testified, I'm treating for severe osteoarthritis, which there's no question. Both parties agreed that an accident did happen, am I correct? No, we disputed an accident because he goes in for treatment and he specifically has no evidence of any injury. If you hit your knee on something, I'm sorry, go ahead. Thank you. The doctors didn't say, both of them say, that he did suffer an accident? The doctor stated that he came in and said that he hit his knee on a tow bar and that's what they all said. And they accepted it? They had no reason to dispute it. But what you find is that he also says, I've never had any problems with my knee, which amazingly he has, that go all the way back to 2001, with them taking a film a year earlier, comparing it to the new film, and finding nothing different. So where you end up is if all of these doctors are relying on what Mr. Anderson is telling them, but Mr. Anderson is not telling them the absolute accuracy of all the statements, then the House of Cards is not going to keep standing up. Basically, you keep pulling them out, of which Judge Schuert found 14 cards that he was able to pull out, on top of the fact that there was no bruising and no swelling when he first goes in. I mean, if you smack your knee hard enough, that you're going to need a total knee replacement, there should be some evidence that you actually hit your knee on something. And in this case, there wasn't. No swelling, no bruising, x-rays are the same. And there's no question that when you're bone-on-bone, which is essentially what Dr. McMullin said he was, that's severe osteoarthritis. And I know what CISPRO says. It's like, yeah, we take them as we got them. He'd only worked there for two months, and that being the case, had there been any actual evidence besides him going in and saying, hey, this happened, but there isn't. And that was the whole problem with it. And then you end up with all the contradictions. You're saying there were no physical manifestations. None at all. However, again, nobody's disputing, in essence, that something happened. He reported an accident, correct? That's what he said. But like I said, if you're going to hit your knee hard enough, that you're going to need a total knee replacement, I think there would be bruising, there would be swelling, and none of these records indicated this. On top of that, you have all the contradictions that come in with what Mr. Anderson testified as opposed to what was in his medical records. He's testifying that he worked hard in physical therapy. He gave it his all. Look at the physical therapy notes. No, he didn't. They said his efforts were minimal, and he basically got discharged because he wasn't doing what they asked him to. He'd come in and say, oh, my knee's swollen. They'd look at his knee. His knee wasn't swollen. And this goes on through the course of his treatment. And if you go back to this is all riding on the fact that Mr. Anderson supposedly hit his knee so hard that he was in pain that was 10 out of 10, but can work the rest of his shift, show up for medical treatment with no evidence of any injury. Three days later, there's no bruise. I mean, I'll give you there might not have been a bruise the first day. But three days later, you hit it that hard, there's going to be a bruise. Was there any medical evidence to dispute McMullen's conclusions? I see it here in the record. McMullen says, I've seen people who've had significant arthritis who are able to function and may not even know they have arthritis. And then there's an accident, and then it triggers exacerbation of the conditions. Was there any evidence contrary to McMullen on that point? No, that's factual evidence. There's no question about that. But the record reveals that Mr. Anderson wasn't asymptomatic. I mean, he was getting treatment for his knee, albeit it wasn't two days before the accident. I mean, it's not that subtle. But if you look at the record from when he went in in March of 2005, he's complaining of the exact same thing that he's complaining about, except there's no toe motor this time. It's the inside of his knee. And the reason it hurt was because when he'd stand up from sitting, his knee would hurt. So that's the only difference. You couldn't convince Commissioner Lamborn, could you? Obviously not, Your Honor. Let me ask you another poignant question. And you're good at answering poignant questions. Is there evidence, if somebody asked you, is there evidence in the record to support the Commission's decision, what would your response be? No. My response to the question is there is evidence in the record to support the decision. However, the manifest weight of the evidence standard comes into play when an opposite conclusion is clearly evident, which obviously was the case with Judge Schuert. He found that an opposite conclusion was clearly evident. And if you only look at the top layer, if you're looking at your little house, if you just look at the roof that the Commission put on, then, yeah, it's fine. So you're saying the roof was built on a faulty foundation?  The whole thing is based on Mr. Anderson's testimony. And that's what gets you back to the problem with the fact that the decision says the petitioner testified credibly. How could he? I mean, if I stood here and came up with 14 statements to you that you could pull out in the record and say, well, that's not true, that's not true, that's not true, I mean, you'd be questioning my credibility. You couldn't take judicial notice of the fact you're credible? No, Your Honors, I don't think so. I wish you could. But with that said, that is the problem with this case. This is the evidence that was put in front of Judge Schuert. He did look at it. He looked at all the discrepancies. And he looked at the fact that when this man sought medical treatment, albeit he said, I hit my knee on a tow motor, there was no evidence to indicate an actual injury. In fact, the evidence was to the contrary, because the film that was taken over a year before his alleged work accident was exactly the same as what it was after the accident. And so we are asking you to affirm the Circuit Court's decision, vacating the Commission's decision. Thank you, Counsel. Rebuttal, please. Thank you. Just a few things. I've got this case here, Timothy Roberts v. Federal Commission, 1983 Supreme Court of Illinois case. And what it stands for in part, it states, question whether a claimant's disability is attributable to a gendered condition or to an aggravation of a preexisting condition because of an accident. It's a question of fact to be decided by the Industrial Commission and not the reviewing court. Something else the case stands for, it's for the Industrial Commission, not the reviewing court, to determine the matter to credibility. That doesn't mean it's not revealable, does it? I mean, it's revealable. And it's revealable under a manifest way standard. It is. That is correct. We don't reweigh the evidence, but we determine whether or not the conclusion is clearly apparent. I do agree. It's not a situation where they're non-revealable. That's correct. I do agree. How do you hold a guy that is found to be not telling the truth on 14 occasions credible? How do you do that? Well, I would start with taking a look at each individual instance of the alleged non-truth telling and see how it weighs out in the context of everything else, in the context of what else is in the record, in the context of the rest of the medical history. And towards that end, I mean, there's no medical opinion in this case that there's a requirement of objective symptoms if you were to bang your knee and aggravate pre-existing health care threats. There's nothing in the record that suggests that, except for the opinion provided by counsel. There's no proof in the record that he wasn't flipping around at work, that he didn't take it easy. Or those few hours he had remaining in the ship. In the circuit court, I think improperly submitted, substituted, excuse me, its fact-finding and credibility determination for that commission. And something else regarding these forms and intakes into doctor's offices and the hospitals. The questions, at times, are notoriously vague. Have you had problems in the past? Well, what exactly does problems mean? Does it mean an ache? Does it mean an incredible pain, just like you're experiencing after an accident? I mean, to what extent? So that's partially answering your question. You have to look at the answer that's given in the totality of everything else, including Mr. Anderson's testimony and the information that Dr. McMullen provided for his opinions. Either Mr. Anderson made this all up and is a liar, or the commission did not believe that he was lying. And I submit to you that he didn't make it all up, and the commission's findings were reasonable and proper. Yeah, that's all I have. Further questions? Thank you, Counselor. The court will take the matter under advisement for disposition. We'll stand at recess for a short period.